HOLLAND *v.* NAKDIMEN.

Opinion delivered September 24, 1928.

*Chester Holland* and *Daily & Woods*, for appellant.

*J. B. McDonough, Jr.,* and *J. B. McDonough,* for appellee.

HART, C. J., (after stating the facts). The correctness of the decree of the chancery court depends upon the validity or invalidity of act 118, passed by the Legislature of 1927, having for its purpose to regulate the rate of interest which may be paid by banks in the State of Arkansas on deposits. Acts of 1927, p. 357.

Section 1 of the act reads as follows:

"That from and after the passage of this act it shall be unlawful for any bank, savings bank or trust company, or other association of persons engaged in the business of receiving deposits within this State, to

922

either directly or indirectly offer to pay or pay a rate of interest in excess of four per centum per annum upon such deposits, irrespective of the nature thereof.''

Section 2 provides that any officer of any such bank violating the provisions of the act shall be guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not less than $25 nor more than $100, and each transaction of such a nature as described in § 1 shall constitute a separate offense.

All the textwriters agree that the business of banking is so closely related to the public welfare that it properly falls within the police power of the State, and the adjudicated cases so hold.

In Thompson on Corporations, 3 ed., vol. 1, § 491 (460), it is said:

''Perhaps no class of corporations are more completely under police regulation of the States than banking companies. The police power, in its visitorial aspect, as exercised by Congress and the several States, extends to the minutest details of the banking business. These corporations are not, strictly speaking, *quasi* public in their nature; but they are of such a character that the State can and does protect the public by any and all reasonable regulations necessary to that end. The peculiar relation that banks sustain to the public, and by this is meant their depositors, is such that it is the business and the duty of the State to see that corporations embarking in such an enterprise are entitled to the confidence of the public, and that depositors who, in good faith, intrust their money to these institutions shall be protected.''

Continuing, the learned author quoted with approval the following: ''The *quasi* public nature of the banking business, and the intimate relation which it bears to the fiscal affairs of the people and the revenues of the State, clearly bring it within the domain of the internal police power and make it a proper subject for legislative control.'' Further on in the same section

the author quoted with approval from *Blaker* v. *Hood*, 53 Kan. 499, 36 Pac. 1115, 24 L. R. A. 854, as follows:

"Enactments controlling the loaning of money and regulating the rate of interest upon the same have been sanctioned from the earliest times, and the nature of the business done by banks dealing in money, receiving deposits for safekeeping, discounting paper, and loaning money, is such, and is so affected with a public interest, as to justify reasonable regulation for the protection of the people. The confidential and trust relations which exist between the bank and its patrons, and the difficulty that depositors and those dealing with the bank necessarily encounter in detecting irregular practices and in ascertaining the real financial condition of banks, are sufficient to justify inspection and control."

In *Noble State Bank* v. *Haskell*, 219 U. S. 104, 31 S. Ct. 186, the court said that the police power extends to all the great public needs, and held that it includes the enforcement of commercial conditions, such as the protection of bank deposits and checks drawn against them, by compelling cooperation so as to prevent failure and panic. Hence it was held that statutes of the State of Oklahoma subjecting State banks to assessments for a depositors' guaranty fund are within the police power of the State and do not deprive the banks assessed of their property without due process of law or deny to them the equal protection of the law, nor do they impair the obligation of the charter contracts. In discussing the subject, Mr. Justice Holmes, who delivered the opinion of the court, said:

"Among matters of that sort probably few would doubt that both usage and preponderant opinion give their sanction to enforcing the primary conditions of successful commerce. One of those conditions at the present time is the possibility of payment by checks drawn against bank deposits, to such an extent do checks replace currency in daily business. If, then, the Legislature of the State thinks that the public welfare requires the measure under consideration, analogy and principle

are in favor of the power to enact it. Even the primary object of the required assessment is not a private benefit, as it was in the cases above cited, of a ditch for irrigation or a railway to a mine, but it is to make the currency of checks secure, and by the same stroke to make safe the almost compulsory resort of depositors to banks as the only available means for keeping money on hand. The priority of claim given to depositors is incidental to the same object and is justified in the same way. The power to restrict liberty by fixing a minimum of capital required of those who would engage in banking is not denied. The power to restrict investments to securities regarded as relatively safe seems equally plain.''

Following this opinion, it was held that a similar act of Nebraska providing for a guaranty fund and prohibiting banking except by corporations formed under the act, was not unconstitutional. *Shallenberger* v. *First State Bank,* 219 U. S. 114, 31 S. Ct. 189.

We think the principles of law above announced control the present case, and that the act under consideration is a valid one, and is not unconstitutional. If the State, under its police power, may provide a guaranty fund for the protection of depositors and prohibit banking, except by corporations formed under the act, it would certainly seem that declaring the rate of interest which a bank might lawfully pay on deposits, if reasonable, is not so unnecessarily oppressive and arbitrary as to render the act invalid.

It is the contention of the plaintiffs that it has been paying four and one-half per cent. interest on time deposits, and that it is an unreasonable requirement to restrict banks to paying only four per cent. on such deposits. We do not think so. If the business of banking is a proper subject for legislative control, and its regulation falls within the internal police power of the State, the Legislature would clearly have the right to restrict the rate of interest in a reasonable way on time deposits to prevent banks, by agreeing to pay a large

rate of interest on time deposits, from ever becoming insolvent. The act was passed to prevent officers of banks from paying a too high rate of interest on time deposits, recklessly, or in a vain effort to prevent threatened insolvency. The people, of necessity, must deposit their savings in banks, and any reasonable regulation for the protection of such depositors falls within the police power of the State. Small depositors of savings from their daily wages have no means of making an investigation into the solvency of the banks into which they put their money. Hence it is proper for the Legislature to enact laws regulating, restraining and governing the banking business.

It is next insisted that the act in question is an attempt to regulate commerce between the States. It is claimed that the statute places a direct burden on interstate commerce which Congress alone may control. It is insisted that the act is broad enough to include deposits, even when received for the purpose of transmission to another State. The statute was passed for the purpose of regulating and safeguarding the receiving of deposits, which precedes the later transmission of money, although leading to it. *Engel* v. *O'Malley,* 219 U. S. 128, 31 S. Ct. 190. The Supreme Court of the United States in that case cited the case of *Musco* v. *United Surety Company;* 196 N. Y. 459, 90 N. E. 171, 134 A. S. R. 851, and approved the reasoning of that court on the subject. The Court of Appeals of New York said that the acts of receiving the deposits and of subsequently transmitting them, although they may be related, are still entirely distinct.

Again, it is claimed that the act is invalid because it infringes upon the power of Congress to regulate and govern national banks. The City National Bank was organized under the laws of the United States, and is subject to all the acts of Congress regulating and governing national banks. On February 25, 1927, an act of Congress was approved which provided, among other things, the following:

"Any national banking association may make loans secured by first lien upon improved real estate, etc. Such banks may continue hereafter, as heretofore, to receive time and savings deposits and to pay interest on same, but the rate of interest which such banks may pay upon such time deposits or upon savings or other deposits should not exceed the maximum rate authorized by law to be paid upon such deposits by State banks or trust companies organized under the laws of the State wherein such national banking association is located."

Thus it will be seen that the act of Congress expressly provides that national banks may not pay upon time deposits or upon savings accounts a rate of interest exceeding the maximum rate authorized by law to be paid on such deposits by State banks in the same State where the national bank is located.

Finally, it is insisted that the act under consideration went into effect March 7, 1927, and that, in so far as the plaintiff, Mrs. C. C. Scott, is concerned, it would violate a contract which the bank had previously made with her to pay her four and one-half per cent. on time deposits until June 30, 1927. When Mrs. Scott and the bank made this contract they knew that the regulation and control of banks came under the internal police power of the State and that this contract must be subject to all laws then in force or which might thereafter be passed.

The result of our views is that the act under consideration is a valid exercise of the police power of the State, and the chancery court erred in not so holding. Therefore the decree will be reversed, and the case will be remanded, with directions to the chancery court to sustain the demurrer of the defendants to the complaint and to dismiss the complaint for want of equity. It is so ordered.