SIMPSON, BANK COMMISSIONER *v.* MONETTE STATE BANK.

5-3261                                     381 S. W. 2d 442

Opinion delivered June 1, 1964.

[Rehearing denied September 21, 1964.]

*Bruce Bennett,* Attorney General, by *Jack L. Lessenberry,* Chief Asst. Atty. General, for appellant.
*Leon B. Catlett* and *E. J. Ball,* for appellee.

*Smith, Sanderson, Stroud & McClerkin, W. S. Mitchell, John T. Williams, Cooper Land, Louis L. Ramsay, Jr., Fred M. Pickens, Jr., Harry E. Meek, Bowie & Boyce, Doug Bradley,* for Amici Curiae.

ARTHUR G. FRANKEL, Special Associate Justice. The appellee, Monette State Bank, a domestic banking corporation, instituted suit for declaratory judgment to interpret Acts 190 of 1961 and 544 of 1963. The appellants are the State Bank Commissioner and the State Banking Board. Briefs were filed by the parties and amicus curiae and the case heard orally.

The facts are clear and undisputed. During 1937, appellee was granted a domestic banking charter and commenced business in Monette. Appellee was then given permission by the State Banking Board to open a teller's window in Caraway under the authority of Act 191 of 1935 [Ark. Stat. Ann. § 67-319 (Repl. 1957)]. That Act contained the provision that "* * * No office shall be continued at any place after a legally chartered bank has actually commenced business at that place." The General Assembly enacted Act 190 of 1961, now codified as Ark. Stat. Ann. § 67-340, et seq, (Supp. 1963) for the expressed and obvious purpose of clarifying the legal status of a large number of teller's windows that had been created and to furnish a comprehensive guide for the establishment of future windows and repealed Act 191 of 1935. In 1961 appellants issued a charter to the Caraway Bank authorizing the commencement of a new

banking business in Caraway. After this litigation had been instituted the General Assembly, in 1963, passed Act 544 which amended Sections 4 and 5 of Act 190 of 1961.

The question presented in this appeal is whether the teller's window operated by appellee in Caraway can be required to close and terminate business. Relying on Section 4 of Act 190 of 1961, appellee earnestly argues in its excellent brief that its Caraway window was "grandfathered" from the closing requirement. This proposition cannot be sustained by that Section [now § 67-343 (Supp. 1963)] which reads as follows:

"Every legally chartered banking instituiton, which, on or before the effective date of this act [§§ 67-340—67-352], was engaged in operating, or had obtained a permit to operate, any banking facility, may continue to retain and operate same under the general banking laws of the State of Arkansas, except as provided in section 8 [§ 67-348] hereof; and the requirements and restrictions set forth in this act, except as provided in said section 8 [§ 67-347], shall not apply to any such banking facility which, on or before the effective date of this act, was established, engaged in operating, or had obtained permit to operate; but the provisions and restrictions set forth in this act, except as provided in said section 8 [§ 67-347] shall be applicable only to those tellers windows which shall henceforth be established pursuant to the provisions of this act;".

Moreover, history of the legislation confirms a consistent attitude of the legislature to encourage organization and ownership of local banks by requiring a teller's window to close when a bank is chartered in the community where only window services are furnished.

Next, appellee forcefully contends that it possesses a vested right to continue the operation of its facility in Caraway. To subcribe to such a theory, Act 191 of 1935 which initially permitted the opening of the window must be ignored. Of greater consequence, the fundamental

rule of this jurisdiction that banking by corporation is only a privilege would necessarily be overruled. Appellee has failed to furnish any authority or reason to alter our many decisions. *State Use Crawfordsville Special School District* v. *Huxtable,* 191 Ark. 10, 12 S. W. 2d 1; *Holland* v. *Nakdimen,* 177 Ark. 920, 9 S. W. 2d 307. Appellee never possessed more than a conditional privilege which was constantly susceptible to immediate revocation. Such legislation was within the proper sphere of inherent police power. As asserted by appellants, a conditional privilege cannot produce a vested right.

Appellee also advanced the argument that the Acts in controversy are discriminatory since windows located in the same municipality as the parent bank (such as Little Rock banks) are not required to close when a new bank is chartered in the city. There is no merit in this. The Acts apply uniformly to all banking institutions. The fact that the legislature makes a distinction between a locality that does not have full banking services and teller's windows located within the municipality is not discriminatory but rather reasonable and necessary. It is proper to add that there is no question but that appellee has faithfully served its customers, but this fact is not material or decisive since the business that a window may transact is severely restricted. Ark. Stat. Ann. § 67-342 (Supp. 1963). This only points up the preferability of encouragement of new local full service banks for vigorous and vital communities.

However, we construe Act 190 of 1961 to contain the same provision as Act 191 of 1935 pertaining to closing of a teller's window. On this issue, Act 190 of 1961 is constitutional in all respects, and Act 544 of 1963 which only clarifies certain language is held to be constitutional and valid.

There is no question but what the General Assembly could retroactively alter that provision by Act 544 of 1963, and so logically no detriment accrued by the subsequent passage of Act 544. In *Holland* v. *Nakdimen,* *supra,* it was stated:

"\* \* \* When Mrs. Scott and the bank made this contract they knew that the regulation and control of banks came under the internal police power of the State and that this contract must be subject to all laws then in force or which might thereafter be passed."

See, also, *Leep* v. *St. Louis, IM&S Railway Company,* 58 Ark. 407, 25 S. W. 75; *Dover* v. *State,* 165 Ark. 496, 265 S. W. 76; *Shields* v. *Ohio,* 95 U.S. 319.

It is deemed imperative to note that the legislature by the Acts considered here have not set standards to close a bank, but merely to terminate the operation of a teller's window. As noted previously, appellee has not suffered any inequity since the window from its inception was subject to closing.

In view of this decision, it becomes unnecessary to discuss or determine the admissibility of the testimony offered by appellants as to the intent of the legislature by enacting Act 190 to 1961.

The permanent injunction is dissolved and the cause dismissed at the cost of appellee.

GEORGE ROSE SMITH, J., concurs.

JOHNSON, J, dissents.

HOLT, J, not participating.

GEORGE ROSE SMITH, J., (concurring). The minority opinion seems to be based upon the premise that § 4 of Act 190 of 1961 was meant to apply to a teller's window such as the one now before us—a window situated in a city or town other than the one where the parent bank itself is located. When Act 190 is read as a whole it is clear, in my opinion, that § 4 was intended to apply only to those teller's windows authorized by § 1 of the act— windows in the same city or town as the bank itself. Section 8 of Act 190 was evidently meant to govern a window such as the one at Caraway. This section unmistakably carries forward the proviso originally found in Act 191 of 1935, by declaring that such a teller's window must be closed within ninety days after a full-scale banking institution is granted a charter to do business

within the city or town. Thus the appellee could never have acquired a vested right, for the controlling law has always provided that its Caraway window would have to be discontinued if a bank should be established in Caraway.

JIM JOHNSON, Associate Justice (dissenting). I do not agree with the majority view. If the majority opinion is allowed to stand, appellee and those similarly situated will be deprived of their property without due process of law in contravention of Article II of the Constitution of Arkansas and the 14th Amendment of the Constitution of the United States. The rationale of the majority if carried to its logical conclusion could open the door for the summary closing of any state chartered bank in Arkansas, protestations contained in the opinion to the contrary notwithstanding. While it's true as cited by the majority that regulation and control of banks come under the internal police power of the state, never has the power been extended to permit the closing of any entire facility. If a teller's window can be closed in this case under the guise of a proper exercise of the police power, what is to prevent the closing of the entire bank at some future date by the exercise of that same power. The precedent is being set.

The majority seems obsessed with the struggle to breathe life into Act 191 of 1935. This act is dead. The slate was wiped clean when Act 190 of 1961 said in Section 14:

"That Act 191 of 1935, and all other laws in conflict herewith, are hereby repealed."

This specific repeal caused Act 191 of 1935 to be no more. Upon its effective date Act 190 of 1961 became the law applicable to appellee's teller's window in Caraway. Section 4 of this act is as follows:

"Every legally chartered banking institution, which, on or before the effective date of *this act,* was engaged in operating, or had obtained a permit to operate, any banking facility, may continue to retain and operate same

wherever now located under the general banking laws of the State of Arkansas; *and the requirements and restrictions set forth in this Act shall not apply to any such banking facility which on or before the effective date of this Act, established, engaged in operating, or had obtained a permit to operate,* but the provisions and restrictions as set forth in this Act shall be applicable only to those teller's windows *which shall be henceforth established pursuant* to the provisions of this Act.'' [Emphasis mine.]

This provision is so clear as to defy misinterpretation. It emphatically says that the restrictions contained in Section 8 of Act 190 of 1961 providing for closing of a teller's window operated in a different city from that in which the banking institution is operating ''upon the granting of a new charter for a banking institution,'' is inapplicable to appellee's teller's window which was in operation on and prior to March 7, 1961, the effective date of Act 190 of 1961. To construe this act otherwise is to legislate, a function which is beyond the province of this court.

Aside from the business appellee does through its Caraway facility (which amounts to about one-third of its deposits), it is undisputed that appellee has invested a considerable amount of money in machinery, equipment, fixtures, leasehold improvements and other tangible and intangible property in Caraway for the single purpose for use in a banking business. Under the law appellee had a perfect right to build this business and make these investments. Whatever doubts which might have existed as to the status of these rights under the dead 1935 act, certainly under the unmistakable terms of Act 190 of 1961 appellee acquired *vested property* rights to operate and continue to operate its facility at Caraway. There is nothing conditional about these acquired rights—they are absolutely vested. I have no quarrel with the holdings in the cases cited by the majority seeking to support their declarations on this point. The cases simply are not applicable here. It is funda-

mental as stated by the majority that "banking by corporation is a privilege," just as it is fundamental that the state through its internal police power has the right to promulgate and execute *reasonable* regulations of banking corporations. But such is not the case in the matter confronting us. The net effect of the majority holding goes beyond *reasonable regulation* and destroys a preexisting right to do business. To infer as the majority does that a corporate privilege cannot evolve into vested rights is to fly into the teeth of the momentous decision rendered in the celebrated case, *Trustees, Dartmouth College* v. *Woodward,* 4 Wheat. 518, 4 L. Ed 629, and the myriad cases which have never deviated from the rule there set. As spelled out unequivocally in Article II, § 22 of the Constitution of the State of Arkansas, "the right of property is before and higher than any constitutional sanction."

Following the passage of Act 190 of 1961, a bank was established in Caraway. The Caraway Bank was chartered during the period when appellee was operating its facility in Caraway under the property rights vested in it by Act 190 to 1961. Subsequently the General Assembly met and passed Act 544 of 1963, the relevant portions of which provide:

"Section 1. That Section 4 of Act 190 of the Acts of the General Assembly of the State of Arkansas for the year 1961, approved March 7, 1961, be, and the same is hereby, amended to read as follows:

"Section 4. Every legally chartered banking institution, which, on or before the effective date of this Act, was engaged in operating, or had obtained a permit to operate, any banking facility, may continue to retain and operate same under the general banking laws of the State of Arkansas, except as provided in Section 8 hereof; and the requirements and restrictions set forth in this Act, except as provided in said Section 8, shall not apply to any such banking facility which, on or before the effective date of this Act, was established, engaged in operating, or had obtained permit to operate; but the provi-

sions and restrictions set forth in this Act, except as provided in said Section 8 shall be applicable only to those teller's window which shall henceforth be established pursuant to the provisions of this Act; *provided, however, the provisions of Section 8 hereof shall in any event apply to all tellers windows and branch offices established subsequent to the effective date of Act 191 of the Acts of the General Assembly of the State of Arkansas for the year 1935.*"

In commenting on this last pronouncement by the legislature the majority says, "There is no question but that the General Assembly could retroactively alter that provision [Section 4 of Act 190 of 1961, *supra*] by Act 544 of 1963." That is not my understanding of the law. Vested property rights are not to be treated so lightly. This court distinctly declared the law applicable here in *Gillioz v. Kincannon*, 213 Ark. 1010, 214 S. W. 2d 212, as follows:

"The rule appears to be well settled generally that retrospective laws as the one here, are unconstitutional if they interfere with substantive, or substantial rights, and valid only when they effect remedies or procedure. C.J.S. 16, p. 861, § 417 *et seq.*

" 'Rights conferred by statute are determined according to statutes which were in force when the rights accrued and are not affected by subsequent legislation. The Legislature has no power to divest legal or equitable rights previously vested.' *Coco v. Miller,* 193 Ark. 999, 104 S. W. 2d 209.

"In 50 Amer. Jur., p. 493, § 477, the author says: 'Because every law that takes away or impairs vested rights under existing laws, is generally reprehensible, unjust, oppressive, and dangerous, such retroactive laws have not been looked upon with favor, but with disfavor, so that courts are loath to give a statute such effect. To the contrary, a prospective interpretation of statues affecting substantive rights is favored. It is a maxim, which is said to be as ancient as the law itself, that a new

law ought to be prospective, not retrospective, in its operation (*nova constitutio futuris formam imponers debet, non praeteritis*).' ''

See also *Brown* v. *Morison,* 5 Ark. 217; *Porter* v. *Hanley,* 10 Ark. 186; *Beavers* v. *Myar,* 68 Ark. 333, 58 S. W. 40; *Tipton* v. *Smythe,* 78 Ark. 392, 94 S. W. 678; *Smith* v. *Spillman,* 135 Ark. 279, 205 S. W. 107, 1 A.L.R. 136; *Robinette* v. *Day,* 210 Ark. 219, 242 S. W. 2d 124.

On the whole case I cannot escape the conclusion so eloquently stated by this court in *St. Louis, I. M. & S. Ry. Co.* v. *Alexander,* 49 Ark. 190, 4 S. W. 753, ''This is not legislation, but confiscation, and is beyond the power of the legislature.'' The learned Chancellor's decree should be affirmed *in toto.*

For the reasons stated I respectfully dissent.