DEPARTMENT OF PUBLIC UTILITIES *v.* THE ARKANSAS LOUISIANA GAS COMPANY.

4-6026 142 S. W. 2d 213

Opinion delivered July 1, 1940.

*Thomas Fitzhugh, J. T. Hornor, Jr., E. F. McFaddin, W. A. Delaney, Jr., W. T. Anglin* and *Vernon Roberts,* for appellants.

*Moore, Burrow & Chowning, H. C. Walker, Jr., James B. Henderson* and *Wm. C. Fitzhugh,* for appellees.

McHANEY, J. Appellants, other than the Department of Public Utilities, hereinafter called the Department, and its Commissioners, are the Louisiana-Nevada Transit Company, a corporation; the Hope Brick Works, owned by N. P. O'Neal; and the City of Hope, acting for its municipal Water and Light Plant.

On March 20, 1939, the Louisiana-Nevada Transit Company, hereinafter called the applicant, filed with the Department an application for a certificate of convenience and necessity to construct, maintain and operate a natural gas pipeline from Cotton Valley Field in Webster Parish, in northern Louisiana, to the Ideal Cement Company at Okay, Arkansas, a distance of about 75 miles. The basis of the application was a contract with the Ideal Cement Company to supply it with natural gas for the manufacture of cement. Later applicant amended its application so as to be permitted to construct a branch from its proposed line to Okay to Hope so as to serve the municipal water and light plant and the Hope Brick Works, with whom it had contracted to furnish gas at 10 cents per MCF (1,000 cu. ft.), the same rate it had agreed to furnish gas to the Ideal Cement Company. It also offered to serve the little towns of Bradley, Fulton, McNab and Saratoga, on or near its proposed line, at 45 cents per MCF with the approval of the Department.

On July 18, 1939, on its previous petition so to do the Federal Power Commission granted to applicant a limited certificate of convenience and necessity to con-

■■■■■■■■■■■■■■■■■■

struct said gas pipe line from said Louisiana field to Okay and to Hope, Arkansas, over the protest and objections of appellee.

On July 28, 1939, appellee filed a petition to intervene in this action before the Department, which was granted. It alleged that it was a Delaware corporation doing business in the states of Arkansas, Louisiana and Texas, with its principal operating office at Shreveport, Louisiana; that it owns and operates an integrated natural gas system, producing, transporting and distributing natural gas through a pipeline system of more than 1,500 miles of main line; that it serves 62 communities with approximately 44,000 customers in Arkansas, 23 communities with 28,000 customers in Louisiana and 18 communities with 8,000 customers in Texas; that it also serves some industrial customers in said states from its main transmission line; that, in 1938, it sold a total of 38,358,385 MCF of gas, of which 22,394,939 MCF were sold in Arkansas; and its total system revenue for the same period was approximately $8,150,000 of which $4,856,000 came from Arkansas business. It further denied the allegations of the applicant and alleged that the construction of applicant's line is not a matter of public convenience and necessity and that the public interest would be adversely affected if the application is granted; that the loss of consumers applicant seeks to serve will increase domestic rates; that it will serve at the rate offered by applicant if the Department finds that it is fair and reasonable; and that it is able and willing to serve the territory. Interventions were also filed by the City of Hope and the Hope Brick Works in support of the application.

After a long and patient hearing comprising a record of 10 volumes of about 4,000 pages, the Department granted a certificate of public convenience and necessity to the applicant in accordance with its application, to sell natural gas to Ideal Cement Company at Okay, Arkansas, and to Hope Brick Works and the Hope Light & Water Plant at Hope, Arkansas; and directed applicant to file with the Department within 60 days a detailed

survey of the towns of Saratoga, McNab, Fulton and Bradley to determine the feasibility of serving these towns.

Thereafter, in apt time, appellee filed with the Department its petition for a rehearing which was denied, and it then filed in the Pulaski circuit court its petition to review. On a trial before said court on the record made before the Department, the court vacated and set aside the order of the Department, from which is this appeal.

It is undisputed in this record that appellee has been serving the three customers, who have been wooed and won by applicant with cheap gas, for many years and that such service has been adequate and satisfactory with the exception of the price paid for gas, which, in each instance, is substantially higher than the rate of 10 cents offered by applicant.

The Department was created by Act 324 of the Acts of 1935, § 2065 et seq., Pope's Digest. It is a very comprehensive act of 71 sections, giving to the Department broad and comprehensive powers. It was established by the legislature to act for it, and it has the same power the legislature would have, it acting within the power conferred by the act. It is given the power to regulate the service and rates of utilities under its jurisdiction. Before engaging in the utility business in this state or beginning any new construction, or extension therefor, application must be made to the Department for a certificate that the "public convenience and necessity require, or will require, such construction or operation." Section 2104, Pope's Dig. By § 2097 (a) "any party to any proceeding before the Department upon rehearing may, . . . file a petition in the circuit court of Pulaski county against the Department for the purpose of having the lawfulness of any of its final decisions or orders inquired into and determined." Subsection (d) provides: "Upon hearing the court may dismiss the petition to review or vacate the order complained of in whole or in part, as the case may be, but in case the order is wholly or partially vacated the court may also in

its discretion remand the matter to the Department for further procedure not inconsistent with the judgment of the court as in the opinion of the court justice may require. The review shall not be extended further than to determine whether the Department has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the complainant under the Constitution of the United States or of the State of Arkansas.''

It is contended, and we think correctly, that since there is no claim by appellee that the order of the Department complained of violated any of its constitutional rights, the review of such order ''shall not extend further than to determine whether the Department has regularly pursued its authority.'' But this does not mean that the courts cannot inquire beyond mere formality. If the courts may be resorted to by any party before the Department ''for the purpose of having the lawfulness of any of its final decisions or orders inquired into and determined,'' as provided in § 2097 (a), then the phrase in § 2097 (d) ''to determine whether the Department has regularly pursued its authority'' must mean something more than an inquiry into the regularity of the proceedings before the Department. The proceedings before the Department might be regular in all respects, and still its order might be illegal and void as being arbitrary, unreasonable, without any substantial evidence to support it, or in fraud or corruption. *Jernigan, Bank Com.* v. *Loid Rainwater Co.*, 196 Ark. 251, 117 S. W. 2d 18; *Lion Oil Refining Co.* v. *Bailey, ante,* p. 436, 139 S. W. 2d 683.

The duty devolved upon the Department in the first instance to determine, after notice and a hearing, whether the ''public convenience and necessity require, or will require, such construction or operation.'' But, upon application to the courts for a review of this action, they may do so, as said in the Rainwater case, *supra,* ''to determine whether there has been an arbitrary decision or an abuse of discretion, but we should regard and uphold the decision . . . unless it be made to appear

that there is an abuse of discretion or an arbitrary decision." In other words, if the Department's order is supported by substantial evidence, free from fraud, and not arbitrary it is the duty of the courts to permit it to stand, even though they might disagree with the wisdom of the order. In such a case our judgment will not be substituted for that of the Department.

The only other point in the case is whether the order of the Department is supported by substantial evidence, and we think it is. Certain facts are undisputed. Applicant has filed with the Department a certified copy of its articles of incorporation; copies of the contracts it has made with the three industrial consumers it proposes to serve; and has satisfied the Department of its financial responsibility and managerial ability, of the abundance and quality of its supply of natural gas. It has constructed its pipe line to Okay and is now serving the Ideal Cement Company. The city of Hope is, naturally, very much interested in the prospect of cheaper gas rates for its Municipal Light & Water Plant, as also the Hope Brick Works. There is a prospect, but not a certainty, that the cities of DeQueen, Horatio, Lockesburg and Gillam, now wholly without natural gas, may be served by the applicant, as also the towns of Bradley, Fulton, McNab and Saratoga. The order of the Department now under review requires the applicant to make a survey of the feasibility of rendering service to these latter towns and to report its findings to the Department for its action thereon, all of which applicant has offered to serve at a rate of 45 cents per MCF. Then there is the fact of the offer to serve the three industrial consumers at a rate of 10 cents per MCF. The average rate now charged the municipal plant in Hope by appellee is 15.30 per MCF and the new rate will effect a savings of more than $6,000 per year, which may be passed back to its consumers of water and power as dividends in the form of reduced rates. The average rate paid by the Hope Brick Works over a period of several years is 17.35 per MCF and it is estimated its saving will exceed $10,000 per year. The average rates for these three consumers for 1938 were: Ideal Cement Co.,

14.2582c, Hope Light & Water Plant, 16.6812c, and the Hope Brick Works, 15.9808c.

When we consider these and other facts in the record, we cannot say the Department abused the wide discretion given it or that its order was arbitrary and without evidence to support it. In this connection we think it proper to observe that the transportation and distribution of natural gas is a business that should not be immune from competition, under certain conditions, rather than a regulated monopoly. Natural gas is found beneath the earth's surface and it is the subject of discovery and capture, which fact brings into the business the element of hazard and risk. The fact that one is engaged in the business of producing or buying, transporting and distributing same should not alone eliminate him from competition from a new field of natural gas which might be discovered, produced and sold to existing consumers at a much cheaper rate, because of cost of production, proximity to the existing market or a better grade of gas because of a higher B. T. U. content. Therefore, the element of cost, although not necessarily of itself sufficient, is a very important one for the Department to consider in determining whether the public convenience and necessity will be served. Having done so on this and other grounds mentioned, we cannot say there was no substantial evidence to support the order. The trial court was of the opinion that, to permit this competition might adversely affect the 44,000 domestic consumers in Arkansas. We do not think this assumption was justified, because appellee offered to meet the rate.

We think it would be a work of supererogation to undertake to review and apply the principles of law announced in the many cases cited in the excellent briefs of learned counsel on both sides. Only two questions are here presented,—one of law, whether the courts have any jurisdiction to review the order, and the other of fact, whether the order is supported by substantial evidence. Our conclusions as to both points, as stated above, necessarily result in a reversal of the judgment of the trial

court, a dismissal of the action and a reinstatement of the order of the Department.

It is so ordered.