NEWTON, CIRCUIT CLERK, *v.* AMERICAN SECURITY COMPANY.

4-6310 148 S. W. 2d 311

Opinion delivered February 17, 1941.

*Pat Mehaffy, Cooper Jacoway* and *John E. Coates, Jr.,* for appellant.

*Verne McMillen* and *H. B. Stubblefield,* for appellee.

MEHAFFY, J. This action was begun by the appellee, American Security Company, a corporation, against Tom W. Newton, circuit clerk and ex-officio recorder of Pulaski county, Arkansas.

Appellee filed the following petition: "Petitioner, American Security Company, a corporation duly organized and existing under and by virtue of the laws of the State of Arkansas, for its cause of action against respondent, Tom W. Newton, the duly appointed, qualified, and acting circuit clerk and ex-officio recorder of Pulaski county, Arkansas, states: 'That petitioner is the owner of the south half (S½) of the southwest quarter (SW¼) and the northwest quarter (NW¼) of the southwest quarter (SW¼) of section thirty-one (31), township one

(1) north, range twelve (12) west, in Pulaski county, Arkansas.

"That petitioner has caused to be made a plat of the property hereinbefore described subdividing it into twenty-four separate tracts and has designated same as 'Southland Acres,' a subdivision in Pulaski county, Arkansas; that petitioner, in connection with the execution of said plat, has proposed to dedicate to the use of the general public forever a thirty-foot service road along the north side and a thirty-foot service road along the east side of said property; that the property adjoining petitioner's said property on the north and the property adjoining petitioner's said property on the east is undeveloped; that all of said thirty-foot service roads lie entirely on petitioner's property and could be properly dedicated as half roads or half streets; that a county road commonly known as the Base Line road adjoins petitioner's said property on the south; that a county road commonly known as Geyer Springs road adjoins petitioner's property on the west; that said Base Line road and said Geyer Springs road are each and both forty feet in width and twenty feet, or one-half of their width, is located on and across petitioner's said property; that each and both of said roads have existed and been in use as county roads for more than fifty years last past and that never has more than forty feet, twenty feet on petitioner's said property and twenty feet on adjacent property, been embraced in or used as such roads; that all of petitioner's said property is located within five miles of the corporate limits of the city of Little Rock, Arkansas. A copy of said proposed plat is attached hereto and made a part of this petition as exhibit 'A,' the original executed plat being held by petitioner for the inspection of the parties in interest and the orders of the court.

"That petitioner has tendered the original of said plat duly executed and acknowledged to respondent along with the proper fees for record in Pulaski county, Arkansas, as provided by law; that respondent has refused to accept said plat for record for the sole reason that it does not bear the approval of the City Planning Commis-

sion of the city of Little Rock, Arkansas; that both the City Planning Board of the city of Little Rock, Arkansas, and the County Planning Board of Pulaski county, Arkansas, refused to approve said plat of petitioner's property for the sole reason that said county roads, commonly known as Base Line road and Geyer Springs road, are only forty feet in width and have made as a condition precedent to their approval of said plat the dedication by petitioner as part of said county roads for the use of the general public as such two strips of land ten feet wide, one adjoining said Base Line road on the south of petitioner's property and the other adjoining said Geyer Springs road on the west of petitioner's said property; that nothing has been offered to petitioner as the owner of said property for meeting the requirement of said City and County Planning Commissions by dedicating said additional property to be used by the public as part of said county roads.

"That there is imposed upon and positively required by respondent a public duty to accept said plat of petitioner's property for record; that petitioner has no adequate remedy other than the issuance of a writ of mandamus to respondent directing the recording of said plat as provided by law.

"Wherefore, American Security Company, petitioner, prays that a writ of mandamus issue from this court to respondent, Tom W. Newton, circuit clerk and ex-officio recorder of Pulaski county, Arkansas, directing him to accept petitioner's said plat of its property for record and to record the same in the manner provided by law; for all costs herein expended and for all other proper and general relief."

The appellant filed answer denying each and every material allegation of the petition. The case was tried on the following agreed statement of facts: "The respective parties in this cause, hereby stipulate and agree that the facts are as follows: "That petitioner, American Security Company, is a domestic corporation with principal place of business at Little Rock; and respondent, Tom Newton, is the duly elected, qualified and acting circuit clerk and ex-officio recorder of Pulaski county; that petitioner is

the owner of the S½ of the SW¼ and the NW¼ of the SW¼ of section 31, township 1 north, range 12 west, in Pulaski county, Arkansas, which said land lies within 5 miles of the corporate limits of Little Rock.

"That petitioner made a plat of said property subdividing it into 24 separate tracts, designating same as 'Southland Acres,' a subdivision in Pulaski county, Arkansas; that in connection therewith petitioner proposed to dedicate to the public use the 30-foot service roads along the north and east sides, respectively, of said property; that the land adjoining said property, both on the north and east sides thereof, are undeveloped; and that said 30-foot service roads lie on petitioner's property and could be properly developed as half roads or half streets.

"That the county road commonly known as the Base Line road adjoins petitioner's said property on the south and the county road commonly known as Geyer Springs road adjoins said property on the west; that each of said roads is forty feet in width and that twenty feet or one-half of each is located on petitioner's property; that said Base Line road, with said width of forty feet, was established by an order of the Pulaski county court entered February 10, 1894.

"That an order was rendered by the Pulaski county court on October 20, 1921, declaring said Geyer Springs road to be a county road with a width of forty feet, which order stated that said Geyer Springs road had been and was then in use as a public road; that each and both of said roads have existed and been in use as public roads for more than fifty years last past and that never has more than forty feet, twenty feet on petitioner's said property and twenty feet on adjacent property, been embraced in or used as either of such roads; that said roads are now forty feet wide along petitioner's said property and in each direction from petitioner's said property.

"That on November 24, 1939, said County Planning Board adopted its master plan for county roads providing that all said roads (including the two roads involved herein) shall have a minimum width of sixty feet; that

on February 1, 1940, said plan was filed with the respondent in accordance with the provisions of act 246 of the Acts of Arkansas of 1937, appearing in deed record No. 270.

"That on August 5, 1940, petitioner submitted said plat to the City Planning Commission of Little Rock which, pursuant to Pope's Digest, § 2450, transmitted same to the Pulaski County Planning Board for its consideration and report; that said County Planning Board made its report back to said City Planning Board on August 20, 1940, disapproving of said plat because said Base Line and Geyer Springs roads, as laid out on the plat, were less than 60 feet in width, said report reciting in part: 'At the present time the Base Line road is an important connecting road between U. S. highway No. 70 and No. 167 in addition to serving a thickly settled rural community. The Geyer Springs road is also a very important farm-to-market road.

" 'In order to have an orderly development of thickly populated rural areas that will meet future transportation problems, a minimum of 60 feet right-of-way is necessary.

" 'It is recommended that this plat be revised to show an additional ten feet of right-of-way along the Base Line and Geyer Springs roads, or 30 feet as half the roadway width in order to conform to the 60-foot minimum standard.'

"That because petitioner refused to dedicate an additional 10 feet to be added to said roads, both the City and County Planning Commissions refused to approve said plat; that thereupon this respondent declined to accept said plat for recordation, although said plat was properly executed and acknowledged and the necessary fees for recording same were tendered therefor.

"That nothing has been offered to petitioner as the owner of said property for dedicating said additional ten-foot strips to be used by the public forever as a part of said county roads; that should petitioner dedicate said additional 10-foot strips the other one-half of said roads located on property adjacent to petitioner's property

would now remain twenty feet in width and that said county roads in each direction from petitioner's property would now remain forty feet in width.

"That petitioner prior to submitting said plat to either the City or County Planning Commission had executed its bill of assurance providing that no building should be erected nearer than fifty feet from the front of the tracts in said subdivision which front was shown to extend to the edge of said forty-foot roads; that a building had been erected pursuant to said building line and that to dedicate an additional ten feet would cause a violation of said building restrictions unless an amendment were filed to said bill of assurance, which amendment it would be impracticable or impossible to obtain because of the necessity of non-residents interested in the property to execute same; that it would be expensive for petitioner to move its said house which is on a stone foundation.

"That after the judgment of the circuit court in this action the said plat of petitioner's property was recorded by respondent pursuant to such judgment and that conveyances are now being made by petitioner from and according to said plat which is of record."

The court granted the petition, stating in his order that said cause is submitted to the court upon the pleadings, exhibits and agreed statement of facts.

Motion for new trial was filed and overruled, and the case is here on appeal.

Section 2445 of Pope's Digest creates a County Planning Board and prescribes the functions and duties of said board. Section 9690 of Pope's Digest provides for the creation of the City Planning Commission.

It is alleged that the respondent, the clerk, has refused to accept petitioner's plat for the reason that it does not bear the approval of the City Planning Commission of the city of Little Rock; that both the City Planning Commission of the city of Little Rock, Arkansas, and the County Planning Board of Pulaski county, refused to approve said plat of petitioner's property.

The facts show that the petitioner, itself, made the plat and proposed to dedicate to the public use the 30-foot service roads along the north and east sides of said property. The evidence also shows that the County Planning Board adopted its master plan for county roads providing that all roads, including the two roads involved in this controversy, shall have a minimum width of 60 feet.

Section 3 of act 108 of 1929 as amended by § 1 of act 295 of the Acts of 1937 provides for the adoption of the plan and also provides for a public hearing, and that the powers of this section shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted; that the legislature had the power to create the Planning Board and to provide rules and regulations for its government, there can be no doubt.

That the legislature had the power to create the Planning Board and to provide rules and regulations for its government, there can be no doubt.

Appellee first contends that the lower court was correct in holding that no authority existed for the action of the Planning Board because no provision was made for compensation to the landowner. Attention is called to § 22 of art. 2 of the Constitution of the State of Arkansas which provides that private property shall not be taken, appropriated or damaged for public use without just compensation therefor. Of course one's property cannot be taken for public use without compensation, but the evidence in this case clearly shows that no one is attempting to take the property of appellee. The record shows that the appellee itself is seeking to take advantage of the County and City Planning Boards and undertaking to file a plat, and seeks by this proceeding to compel the clerk to record the plat, although when submitted to the Planning Boards, both the County and City Planning Boards refused to approve appellee's plat. There was no law requiring petitioner to file a plat, and if the appellee or the planning boards or anyone else sought to take or damage appellee's property without just compensation therefor, such persons would be prohibited

from doing so. But there is nothing in the record in this case that indicates that anyone is seeking to take the property of appellee; no effort is made to take it. The law requires these boards to investigate and evidently they did so in this case. Yet there is nothing in this record tending to show what evidence they had and no evidence that they acted arbitrarily. There is no contention that the laws providing for these boards is unconstitutional or void.

Appellee contends also that the question is a moot question. After the circuit court issued its order directing the clerk to record the plat, the clerk proceeded to record it, and it is contended that thereafter petitioner sold property and made contracts with reference to the plat. The law provides a certain time within which an appeal may be taken in civil cases, and whoever acts before that time expires, does so with the knowledge that the judgment may be reversed and held void. There is nothing in this contention. While the clerk is the nominal party, yet the planning boards are the real parties in interest.

In discussing the constitutionality of zoning ordinances, this court said in the case of *City of Little Rock* v. *Sun Building & Developing Co.,* 199 Ark. 333, 134 S. W. 2d 582: "Possibly the leading case on the subject, and the one most frequently cited, is that of *Village of Euclid, et al.,* v. *Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016. In that case Justice Sutherland said: 'Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive.' "

If the law is valid, and there is no contention that it is not, then the planning boards were the ones designated to determine these questions. It is true they cannot act arbitrarily, but there is no contention here that they did so.

It has been uniformly held by this court that where boards are lawfully appointed and charged with the duty

to investigate and determine certain facts, the court cannot substitute its judgment for the judgment of the board, and the judgment of the board provided for the purpose of ascertaining the facts is controlling unless there is evidence that it was arbitrarily exercised. *Mo. Pac. Rd. Co.* v. *Williams, ante,* p. 895, 148 S. W. 2d 644; *Jernigan, Commissioner,* v. *Loid Rainwater Co.,* 196 Ark. 251, 117 S. W. 2d 18; *Lion Oil Refining Co.* v. *Bailey,* 200 Ark. 436, 139 S. W. 2d 683; *Dept. of Public Utilities* v. *The Ark.-La. Gas Co.,* 200 Ark. 983, 142 S. W. 2d 213.

After the judgment of the circuit court, and within a few days, a motion for new trial was filed which was thereafter overruled, and in a very short time an appeal was granted to this court. It would be useless to have a planning board if, after it had investigated and reached its conclusion, the court, without any evidence at all and without any claim that the board acted arbitrarily, could set aside its judgment.

The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the petition.

SMITH, J. (dissenting). Rural lands in this state are usually described in conveyances thereof with reference to the public surveys made by the Federal Government. But it is of daily occurrence, in every county in the state, for deeds to be executed in which the lands may not be thus sufficiently and accurately described. Lands may be divided and partition thereof made in a manner which would make descriptions by metes and bounds of the subdivided parts essential if the surveys of the divided parts may not be evidenced by a map of the survey dividing, or subdividing, the lands to which reference may be made. A forty-acre tract of land might be so divided that the subdivisions thereof would not be geometrical figures which could be accurately described by reference to the government survey.

If, therefore, lands may be subdivided without reference to the government survey—and this is constantly done—it is essential that public records of surveys be made, to the end that the subdivided parts may be conveniently described without the employment of descrip-

tions by metes and bounds, and may, without such descriptions, be assessed for purposes of taxation, so that an owner who pays his taxes on a part of the subdivision may have the assurance that his title will not be clouded by the failure of the owner of another part of the subdivision to pay his taxes.

The statute, therefore, provides that "It is made the duty of the recorder of every county to provide and keep in his office a record book to be entitled, 'Record of Surveyor's Plats and Notes,' in which he shall accurately record or make a fair copy and transcript of every plat and the notes accompanying the same returned by him to the county surveyor, as in this act is provided." Section 13697, Pope's Digest.

Section 13698, Pope's Digest, provides that "When a plat and notes accompanying the same of any section or part of section of land shall have been made, returned and recorded, as herein provided, a designation by number of a lot therein, either upon the assessment list, the tax book, the delinquent list, or in any tax receipt, certificates of sale, tax deed, or in any other deed or writing, shall be held and considered to refer to and as being intended to designate the subdivision of such section or part of section as is of the same number on such plat and the notes accompanying."

In making partition of lands under the orders of the courts, the commissioners making partition, pursuant to these orders, are required to allot the several portions and shares thereof to the respective parties, quality and quantity relatively being considered by them according to the respective rights and interests of the parties, designating the several shares and portions by metes and bounds, and may, when necessary, employ a surveyor to assist them in the discharge of that duty. Section 10524, Pope's Digest. The practice is usual, and should be followed in all cases, of having a survey of the partition made and a plat thereof placed of record, to the end that the several portions may be separately assessed, and thereafter separately conveyed. This is usually done by giving the several portions numbers, as, for instance, lots numbered 1, 2, 3, etc., of the

survey of the section, half-section, quarter-section, or forty-acre tract, or other land that may be divided. For instance, a quarter-section might be divided into three irregular and unequal portions as to area. A survey thereof, placed of record, would identify each portion, if it were given a separate number as a lot, and it could thereafter be assessed or conveyed by that number. It would be difficult, and usually impracticable, to assess the portions of a subdivided tract of land by metes and bounds, and there should be and is a convenient method of describing them without employing metes and bounds descriptions. This necessity is met by the provisions of §§ 13697 and 13698, Pope's Digest, copied above.

In the case of *St. Louis-San Francisco Ry. Co.* v. *Sub-District No. 1 of Drainage Dist. No. 11*, 179 Ark. 567, 17 S. W. 2d 299, there was involved the sufficiency of the description of property which had been sold for the nonpayment of drainage district taxes, the lands being described with reference to the surveys. It was there said: "This assignment of error might be disposed of by saying that the motion for a new trial does not call to our attention any particular description which is said to be fatally defective, but of the descriptions discussed it may be said a number referred to private surveys. So far as the record before us shows to the contrary, these descriptions may be good and sufficient. The statute provides for the survey of lands not in cities or towns into subdivisions so that the descriptions employed in the government surveys may not always be essential. Provision is made in § 9932, C. & M. Digest (§ 13697, Pope's Digest), for a record book, to be entitled 'Record of Surveyors' Plats and Notes,' and by § 9933, C. & M. Digest (§ 13698, Pope's Digest), it is provided that assessments may be made with reference to these surveys. See, also, § 9928, C. & M. Digest (§ 13695, Pope's Digest)." See, also, *Holt* v. *Reagan, post,* p. 1101, 148 S. W. 2d 155.

Now, this is what appellee is attempting to do, and is all that it asks to be done. Appellee owns a tract of land containing 120 acres, which it wishes to divide into 24 separate tracts. Their assessment for taxation would

be difficult and impractical if these 24 tracts may not be surveyed and a plat thereof placed of record, in which each tract might be separately numbered. Thereafter each of the 24 tracts could be separately assessed or conveyed by the number given each subdivision respectively in the survey and map. Appellee is asking the enforcement of a right, of which it may not be justly deprived, when it seeks to preserve and make a matter of record the subdivision of its property.

Appellee's property, according to the facts stated in the majority opinion, has a frontage on the Base Line road of a half-mile and an equal frontage on the Geyer Springs road. As a condition upon which it may divide its lands into lots, it is required to abandon for its own purposes a strip 10 feet wide, extending for a distance of one mile. Appellee is not asking any change in the roads, and is not asking that any roads be opened. The roads have been used as such for fifty years. It is asked to concede to public use a strip of its land 10 feet wide and a mile in length. It is not proposed to widen other portions of either road to this extent or to any extent, and it will hardly be contended that any other owner could be required to donate this, or any other quantity of land without compensation.

It is said in the case of *Young* v. *Gurdon*, 169 Ark. 399, 275 S. W. 890, (to quote a headnote), that "The sovereign power of the state to condemn and take for public use involves the correlative right of the individual to just compensation for the property which he has been compelled to surrender for the public welfare."

We quote from the body of the opinion in said *Young* v. *Gurdon* case as follows: "As Chief Justice COCKRILL, speaking for the court in *Railway Company* v. *Petty*, 57 Ark. 359, 21 S. W. 884, 20 A. L. R. 434, says: 'When once the character of the use is found to be public, the court's inquiry ends, and the legislative policy is left supreme.' 'When once the legislature, or the governmental agency to whom it has delegated the power, has determined to exercise that right in the manner prescribed by the law-making body, it is then the exclusive

province and duty of the judiciary, when the character of the proposed use is challenged, to determine whether the purpose is a public one, and, if so, to preserve the right of the individual to just compensation for his property. The measure of compensation is purely judicial here and not a legislative question.' *Hoxie v. Gibson,* 155 Ark. 338, 245 S. W. 332. See, also, *North Laramie Land Co. v. Hoffman,* 268 U. S. 276, 45 S. Ct. 491, 69 L. Ed. 953.''

Appellee has the choice of two alternatives in view of the action of the City and County Planning Boards. It may forego the advantages enumerated above of having the map and plat of the survey recorded, or it may donate its land without other compensation. The majority say there is no evidence that the City or County Planning Board acted arbitrarily. The facts herein stated appear in the record, and are recited in the majority opinion. In addition, the majority opinion quotes from the agreed statement of facts upon which the case was heard in the court below as follows: '' 'That petitioner prior to submitting said plat to either the City or County Planning Commission had executed its bill of assurance providing that no building should be erected nearer than fifty feet from the front of the tracts in said subdivision which front was shown to extend to the edge of said forty-foot roads; that a building had been erected pursuant to said building line and that to dedicate an additional ten feet would cause a violation of said building restrictions unless an amendment were filed to said bill of assurance, which amendment it would be impracticable or impossible to obtain because of the necessity of non-residents interested in the property to execute same; that it would be expensive for petitioner to move its said house which is on a stone foundation.' ''

There is involved here no such zoning ordinance as was construed in the case of *City of Little Rock v. Sun Building & Developing Co.,* 199 Ark. 333, 134 S. W. 2d 582, from which the majority quote. Appellee's property is not in Little Rock, or in any other city. The stipulation is that it is five miles from Little Rock, the nearest town or city.

The majority say: "Of course, one's property cannot be taken for public use without compensation, but the evidence in this case clearly shows that no one is attempting to take the property of appellee." The agreed statement and stipulation of counsel recites that appellee is required to grant for road purposes a strip of its land ten feet wide and a mile in length, for which it is to receive no compensation, unless, indeed, the right to subdivide its land for sale may be called compensation. But it had that right whether the City or County Planning Board granted it or not. It will not be given something that it does not already have. It is merely allowed to exercise a right of which the Planning Boards are without authority to deprive it.

It appears to me that the Planning Boards have, not only acted without authority, but that they have exercised arbitrarily any authority they may have. The answer to the question, "What results will follow if the Planning Boards' orders are enforced?" demonstrates this to be true. Neither of the roads on which appellee's property fronts will be made sixty feet wide at any point. So much of the roads as front appellee's property will be widened to the extent of the ten feet on appellee's side of the road, so that this segment of the road will be fifty feet wide. At all other points the roads will remain forty feet wide.

In my opinion, the judgment of the court below, ordering the clerk to place the map of the survey of appellee's property of record, should be affirmed, and I, therefore, dissent.