PIGGOTT STATE BANK *v.* STATE BANKING BOARD ET AL

5-4194                                                   416 S. W. 2d 291

Opinion delivered June 5, 1967
[Rehearing denied July 26, 1967.]

*Smith, Williams, Friday & Bowen,* for appellant.

*Glenn F. Walther,* for appellee.

JOHN A. FOGLEMAN, Justice. This is an appeal from a judgment of the Pulaski Circuit Court refusing, on certiorari, to set aside the action of the State Banking Board granting a charter upon the application of Harold Jinks and others for a state bank at Piggott to be known

as Peoples Bank of Piggott. Application for the writ and the setting aside of that action was made by Piggott State Bank, a state banking institution long in business at Piggott. Two hearings were held by the State Banking Board with the same result. In the interval between them the personnel of the Board changed so that two new members participated in the second hearing.

Minutes of the Board show that the application was considered at a meeting held on March 24, 1966. At that meeting the proponents and opponents were heard separately. By a vote of 3 to 2 a motion to grant the charter, subject to approval of deposits of the new bank for insurance by the Federal Deposit Insurance Corporation, was tabled for ten days. During this period the Board recommended to the Bank Commissioner that the attorney for the opponents be permitted to file a brief summarizing objections to the granting of the charter. On April 4th a telephone poll on the granting of the charter resulted in a vote of 3 favoring and 1 opposed, the Chairman abstaining.

Appellant, an opponent, filed a petition for certiorari in the Pulaski Circuit Court. It complained that the opponents were unduly restricted in presenting their objections, having been denied a continuance and allowed only one and one-half hours to present their case. The petition was granted. After the trial court reviewed the transcript of the proceedings before the State Banking Board, it remanded the matter to the Board with directions to hold another meeting and to cause oral testimony heard to be made a matter of record for inclusion in a transcript. The circuit court also required that a quorum of the Board be present to act on the charter, holding the telephone poll to have been improper.

After the second hearing on June 9th the charter was granted, subject to Federal Deposit Insurance Corporation's approval for insurance, by the vote of four

members, the Chairman abstaining[1]. Appellant then applied to the Pulaski Circuit Court for a supplemental writ of certiorari, asking that the court approve or disapprove the application. The writ was granted, and Peoples State Bank of Piggott was permitted to intervene. After the trial court considered the record and briefs of the interested parties, it found that there was substantial evidence to support the action of the State Banking Board. The judgment dismissed the petition for certiorari and directed the granting of the charter.

The State Banking Board is required by statute, upon submission to it of an application for a charter filed with the State Bank Commissioner, to make such investigation as shall enable it to determine the fitness of the applicants, the need, from the public standpoint, for the proposed institution, and all other questions bearing directly or indirectly upon the need or desirability of the proposed institution from the public standpoint, and to promptly approve or disapprove the application. If the Board approves, the Bank Commissioner may, in the event he also approves the application, grant the charter. Ark. Stat. Ann. § 67-205 (Repl. 1966).

We find no provision for appeal to the courts from any decision of the Board, such as provided from actions of the Savings and Loan Association Board, on which the review is limited to a determination whether the findings of the Board are supported by substantial evidence. Ark. Stat. Ann. § 67-1811.

The business of banking is closely related to the public welfare and within the police power of the state. The peculiar relationship of banking corporations to the public, their depositors, is such that it is the duty of the state to see that those who embark upon the enterprise are entitled to the confidence of the public and that those who entrust their money to these institutions are protected. *Holland* v. *Nakdimen,* 177 Ark. 920, 9 S. W. 2d 307, 62 ALR 484. The power extends to the regulation or even

---

[1] It is stated by the parties that the Chairman, in a letter, later expressed his dissent from the action of the Board.

the prohibition of the business except on such terms as the state may prescribe. *State* v. *Huxtable,* 191 Ark. 10, 12 S. W. 2d 1.

Thus, it is essential and appropriate that an agency such as this Board be vested with broad powers and discretion on questions such as are presented on applications like this. At least two of the members are required to be active bankers. It is required that the State Bank Commissioner recommend one member, the Arkansas Bankers Association two members, the Governor appoint one without recommendation, and that the four members recommend a fifth.

The holding of this court in *Newton* v. *American Security Co.,* 201 Ark. 943, 148 S.W. 2d 311, is appropriate here. There it was said:

"It has been uniformly held by this court that where boards are lawfully appointed and charged with the duty to investigate and determine certain facts, the court cannot substitute its judgment for the judgment of the board, and the judgment of the board provided for the purpose of ascertaining the facts is controlling unless there is evidence that it was arbitrarily exercised. *Mo. Pac. R. Co.* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644; *Jernigan, Commissioner* v. *Loid Rainwater Co.,* 196 Ark. 251, 117 S. W. 2d 18; *Lion Oil Refining Co.* v. *Bailey,* 200 Ark. 436, 139 S. W. 2d 683; *Department of Public Utilities* v. *Arkansas Louisiana Gas Co.,* 200 Ark. 983, 142 S. W. 2d 213."

In a case involving the State Banking Department when its Securities Division denied an application for a loan broker's license, (*Jernigan, Bank Commissioner* v. *Loid Rainwater Co.,* 196 Ark. 251, 117 S.W. 2d 18) this court said:

"It must be remembered that the duty imposed by law of investigating and determining whether a license should be granted or refused is not imposed

upon this court nor upon the learned judge from whose order this appeal comes. He, in the first instance, and we, upon appeal, may review this action to determine whether there has been an arbitrary decision, or an abuse of discretion, but we should regard and uphold the decision of the Securities Division of the State Banking Department unless it be made to appear that there was an abuse of discretion or an arbitrary decision. *St. Louis S.W. Ry. Co.* v. *Stewart,* 150 Ark. 586, 235 S.W. 1003; *Rural Special School Dist.* v. *Common School Dist.,* 183 Ark. 329, 335, 35 S.W. 2d 587; Sections 170 and 171, chapter Public Officers, 22 R.C.L. 490; Sections 290, 291, and 293, chapter Officers, 42 C.J. 1033.''

In view of the fact that the act in question does not require any hearing, reduction of evidence to writing, or formal findings, there might be considerable doubt whether the action of the board would support a proceeding by certiorari. See *Dixie Downs, Inc.,* v. *Arkansas Racing Commission,* 219 Ark. 356, 242 S.W. 2d 132; Annotation 102 ALR 534; 14 Am. Jur. 2d 800 et seq., Certiorari, § 24. We bypass that question, however, as a hearing was held and a transcript of the testimony made.

There is some authority that there must be substantial evidence to support the findings of certain state boards. See, e.g., *Department of Public Utilities* v. *Arkansas Louisiana Gas Co.,* 200 Ark. 983, 142 S. W. 2d 213.

Even though appellant brought out many factors which would have great bearing on the credibility of witnesses for intervenor and the weight to be given their testimony because of possible interest or bias and offered substantial evidence that there was no public need for the proposed new bank, we find that there was substantial evidence upon which the board might have based its findings. We cannot say that the action of the Board was arbitrary, or an abuse of discretion.

Harold Jinks, Special Assistant to the Regional Director of the Post Office Department, a Piggott resident and president of the proposed bank, testified. He said that while the economy was booming, Piggott was not booming; that there was more vacant space on the town square than there was in depression years; that transportation was inadequate. He made comparisons of per capita bank deposits and per capita loans in Piggott with other towns in Arkansas, showing that these amounts were lower in Piggott than in other localities, including some in Clay County in an area where banks were said to be competitive with the present bank in Piggott.[2] He expressed the opinion that banking facilities in Piggott were not adequate and that this lack contributed to a condition of stagnation in the town.

A. B. Boyd, Jr. of Campbell, Missouri, who lives eleven miles from Piggott and is a stockholder in a cotton gin at Piggott and the owner of a two-third's interest in a gin at Pollard, testified. He said that he did business with the State Bank of Campbell and Piggott State Bank. He related that the bank at Campbell is a par bank but the Piggott State Bank is not. Loans obtained by the gins from appellant were at a higher interest rate than he paid on loans at Campbell. He stated that 50% of the checks he received in his business around Piggott were drawn on banks in other localities and that a lot of banking business leaves Piggott. He asserted that appellant required a greater ratio of security than the bank in Campbell.

Myron Rodgers, former President of the Chamber of Commerce at Piggott and presently a member of the Board of Directors thereof, who is a poultry jobber operating from Helena to Crystal City and Festus in Mis-

---

[2] In this regard appellant pointed out that the witness had not taken into consideration the deposits in or loans by a savings and loan association. A much more favorable comparison existed when this was taken into consideration. However, it was not shown in which of the towns and cities with which this comparison was made there were such associations, except that it was testified there was no such association in certain of the towns in Clay County.

souri, in part of Tennessee and west to Newport and Pocahontas, operating 38 trucks and having a warehouse of a value of $50,000, testified on behalf of the applicants. He said that he had never made an application for a loan at the Piggott State Bank that was declined until after the application for a new bank at Piggott was filed. When he made this application, the bank there was not interested, according to him. He claimed to know of two other persons, not named, who applied for loans which were declined by the Piggott State Bank who borrowed money from another bank. He stated that two medical students, whose loans would have been guaranteed by the federal government, were refused loans at the Piggott State Bank but that after the current application was filed, one of them was loaned the money he requested.

George Cook, who was engaged in the general insurance and real estate business in Piggott, testified that he borrowed money at Caraway because he did not feel that he had had proper treatment at Piggott State Bank since he purchased stock in the new bank. He said that he had paid 8% interest at Piggott and 5% at Caraway on about the same security. He also said that people he dealt with issued 25% to 30% of their checks on banks other than Piggott State Bank. Most of them, he said, were drawn on banks in Rector and Kennett, Missouri.

Ralph Williams, farmer, cattleman, grain buyer and feed dealer, all of whose business interests were in the Piggott area, also testified for the applicants. He stated that 50% of the people with whom he dealt gave checks drawn on banks other than the bank at Piggott. Two of the principal places on which the checks were drawn were Rector and Kennett. Loans for which he had applied at the Piggott bank, more than four years previously, were declined but he obtained them from the banks at Kennett. The security offered in all instances, he said, was warehouse receipts, principally on soybeans.

E. J Latta, who had worked at a bank in Chaffee, Missouri for 22 months and for the Federal Deposit Insurance Company as a bank examiner for seven and one-half years, had worked for Piggott State Bank for four and one-half years. He stated that he had discovered, after he left Piggott State Bank, that it had the most conservative loan policy of any bank that he was ever in and that interest rates were relatively higher than in most other banks. He was recently employed by Clay County Propane Company, formerly Irby Butane Gas Company in Piggott, but presently employed with Federal Housing in Little Rock. He estimated that 40% of the checks they received from customers in the trade territory were drawn on banks other than the Piggott State Bank. He stated that Piggott State Bank did not offer savings account service on passbooks or Christmas Savings Plan, or automobile drive-in windows, but limited their facilities to checking accounts and certificates of deposit. He also stated that Missouri banks file more than half as many financial agreements (financing statements?) in the Eastern District of Clay County as do the three county banks combined.

Chester Pearman, a witness for appellant, was executive vice president and cashier of Cotton Exchange Bank of Kennett, Missouri. He stated that prior to 1960 there were two banks in Kennett, but after the third bank was chartered it had deposits of $3,500,000 and the deposits in his bank had grown $1,200,000 even though he thought they were "overbanking" when the third charter was granted. He said that this was because of division of existing business and such growth as the community had. The big bank in Kennett, he said, had increased $1,000,000 to $1,500,000.

A very persuasive case was made by appellant as to the highly competitive banking situation in the trade area in Clay and Greene Counties in Arkansas and in the neighboring territory in Missouri and the adequacy of the banking facilities in Piggott. Many of the witnesses for protestants were bank officers who, according to the testimony, were in areas where banking was competitive.

All thought the existing banking facilities were adequate and that there was no need for a new bank at Piggott and that the granting of a charter would be adverse to the public interest. But we do not determine where the preponderance of the evidence lies, nor do we determine the credibility of the witnesses or the weight to be given to their testimony, — this is all a function of the State Banking Board.

It is not the function of this court, on appeal from a circuit court, to determine where the preponderance of the evidence lies. Decisions in cases appealed from chancery courts, in which our trial is de novo, do not constitute authority on this question. Moreover, certiorari lies only for the purpose of review for errors of law, one of which may be the legal sufficiency of the evidence to sustain the judgment of the tribunal, but a court cannot review merely for errors of judgment or try the matter de novo. *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041; *Veteran's Taxicab Co.* v. *City of Ft. Smith,* 213 Ark. 687, 212 S. W. 2d 341; *McCain* v. *Collins,* 204 Ark. 521, 164 S.W. 2d 448. It has been said that a board's action will not be set aside on certiorari unless there is an entire absence of substantial evidence, in which case the board action is deemed to be arbitrary. *Bockman* v. *Arkansas State Medical Board,* 229 Ark. 143, 313 S. W. 2d 826.

Appellant complains that the proceedings were so irregular and prejudicial to appellant as to require reversal. In part, this contention is based upon failure to follow strict rules of evidence. A hearing before a board does not cease to be fair because rules of evidence and procedure governing judicial proceedings are not followed or evidence has been improperly rejected or received. The hearing cannot be said to be unfair unless the defect might have led to a denial of justice or an element of due process is absent. *Kuhl* v. *Arkansas State Board of Chiropractic Examiners,* 236 Ark. 58, 364 S. W. 2d 790.

Another basis of this contention is the charge that one of the board members displayed bias and prejudice

toward the protestants, their witnesses and their attorney. Even though there may appear to have been some attitude of hostility on the part of this member, the chairman took steps to keep the proceedings orderly and to see that a full hearing was given. We find no statutory rule, nor is any pointed out, for disqualification of a member of this board. No effort was made to disqualify this member or to have him excuse himself, nor was any objection made to his participation in the hearing, although he was a member of the board at the time of both hearings. Nor was this contention made a basis of either the original or supplemental petition for certiorari. Even if he were disqualified, the determination would only be voidable and the irregularity is waived by the failure to object. 1 Am. Jur. 2d 863, Administrative Law, § 68. We are unable to say that there was error on the part of the trial court in failing to void this proceeding on the basis of this contention. The fact that the same result was reached at the conclusion of both hearings with the change in membership that took place has some bearing on this determination.

There is one respect in which the order of the circuit court is in excess of its jurisdiction, on certiorari, and it must be modified in that respect. The order directs the State Banking Board to forthwith issue a charter to Peoples Bank of Piggott. The State Banking Board can only approve or disapprove the application. After its approval, the Bank Commissioner may, in the event that he also shall approve the application, grant the charter. Ark. Stat. Ann. § 67-205 (Repl. 1966). The judgment of the circuit court, then, is modified to eliminate that portion directing the issuance of a charter.

Affirmed as modified.