REDFIELD TELEPHONE COMPANY *v.* ARKANSAS
PUBLIC SERVICE COMMISSION

81-49                                              621 S.W. 2d 470

Supreme Court of Arkansas
Opinion delivered September 28, 1981

*McMath & Leatherman*, by: *James Bruce McMath*, for appellant.

*Jeff Broadwater*, for appellee.

*Bachmann, Weltchek & Powers*, by *Andrew Weltchek*, New Orleans, LA for intervenor, ACORN.

RICHARD B. ADKISSON, Chief Justice. This is an appeal from a circuit court judgment affirming the Arkansas Public Service Commission order of April 7, 1978, revoking the Certificate of Convenience and Necessity, hereinafter Certificate, of the Redfield Telephone Company, hereinafter Company. We affirm.

The Company was granted a Certificate by the Commission to serve certain areas of Pulaski, Jefferson, Saline, and Grant counties and is a public utility subject to the jurisdiction and supervision of the Commission by virtue of Ark. Stat. Ann. §§ 73-201 — 276.18 (Repl. 1979). The Commission took its action after notice and a full hearing in a formal proceeding which was recorded and is a part of the record on appeal.

In revoking the Certificate the Commission found, based upon testimony of customers, Company officials, and Commission investigative staff, that the Company had violated Special Rules 3.3, 11.1, 12, 17, 19, 22, 26, 27, 28, 31, 32, and 33 which were promulgated by the Commission on January 22, 1973, pursuant to Ark. Stat. Ann. § 73-218 (Repl. 1979) and that the Company had failed to comply with two separate Commission orders directing the Company to comply with these specific rules. The Commission also found that many of the customer service complaints could not be attributed to lack of operating funds but rather to the philosophy and ability of the present management and,

therefore, customer difficulties with service would persist as long as the present management was associated with the Company. Based upon these findings, the Commission held that public necessity required the revocation of the Company's Certificate since reasonably adequate service had not been provided. However, as an alternative to revocation, the Commission indicated that an agreement by the Company to transfer its plant and Certificate to an able third party would be acceptable.

In *Public Service Commission* v. *Continental Telephone Co.,* 262 Ark. 821, 561 S.W. 2d 645 (1978), this Court recognized that a Certificate could be revoked.

If the rates are such that the Company cannot finance the improvements necessary to provide the required quality of service . . . it is inevitable that confiscation will result and that Continental's Certificate of Public Convenience and Necessity will be lost, through surrender or revocation, and awarded to some other telephone company . . . *Id.* at 830-831.

In holding that the Public Service Commission of Puerto Rico had the power to revoke a franchise, the United States Supreme Court in *Public Service Commission* v. *Havemeyer,* 296 U.S. 506 (1936), stated that in every grant of franchise is the implied condition that it may be lost by misuse.

Appellant argues that the Commission does not have authority to revoke its Certificate because revocation is a judicial as opposed to a legislative function. But, we held otherwise in *Veteran's Taxicab Co.* v. *City of Fort Smith,* 213 Ark. 687, 212 S.W. 2d 341 (1948) where we affirmed the Fort Smith City Commission's legislative revocation of a taxi franchise. In *Delaware Coach* v. *Public Service Commission,* 265 F. Supp. 648 (1967), it was stated that since granting or withholding certification to a public utility is a legislative function, the determination to revoke must also be legislative in character.

The Commission itself has long recognized it has the

power to revoke a certificate, as evidenced by *Re R. V. Taylor*, 69 PUR 3d 205 (Ark. 1967):

> [A] telephone company . . . must first obtain from this commission a certificate of convenience and necessity authorizing it to provide local telephone service. If thereafter, the public utility fails to render adequate service to the residents in the area which it professes to serve, the commission can cancel the certificate of convenience and necessity and so make the area available for service by another telephone company.

Appellant next argues that even if revocation is a legislative function, it has not been delegated to the Commission by the legislature. We have held to the contrary. The legislature has delegated and entrusted the administration of the Public Utilities Act to the Commission. *Ark. Power & Light Co.* v. *Ark. Public Service Commission*, 226 Ark. 225, 289 S.W. 2d 668 (1956); *Dept. of Public Utilities* v. *Arkansas Louisiana Gas Co.*, 200 Ark. 983, 142 S.W. 2d 213 (1940). The Commission was created to act for the General Assembly, and it has the same power that body would have when acting within the powers conferred upon it by legislative act. *Southwestern Bell Telephone Co.* v. *Ark. Public Service Commission*, 272 Ark. 550, 593 S.W. 2d 434 (1980).

The delegation of such authority is evidenced by three separate Arkansas statutes.

First, Ark. Stat. Ann. § 73-202 (a) (Repl. 1979), provides:

> The Department [Commission] herein created [Arkansas Public Service Commission or Arkansas Transportation Commission] is hereby vested with the power and jurisdiction, and it is hereby made its duty to supervise and regulate every public utility in this Act defined, and to do all things, whether herein specifically designated, that may be necessary or expedient in the exercise of such power and jurisdiction, or in the discharge of its duty.

Second, Ark. Stat. Ann. § 73-230 (Repl. 1979), provides:

The Department [Commission] may at any time, and from time to time, after notice, and after opportunity to be heard as provided in the case of complaints, rescind or amend by order any decision made by it. . . .

Third, Ark. Stat. Ann. § 77-1632 (2) (Repl. 1981), provides:

(2) No cooperative shall undertake the construction, extension, or operation of any facilities for supplying or furnishing telephone service unless and until it [there] has been secured from the Commission a certificate that the present or future public convenience and necessity requires or will require such construction, extension, or operation: . . . Provided, further, that no area then being furnished with reasonably adequate telephone service by a telephone company or a cooperative shall be assigned to another cooperative or telephone company; . . .

Courts in other states with similar statutes have held that a Commission has the power to revoke a Certificate, reasoning that the statutory power to rescind its decisions necessarily entails the authority too revoke a Certificate. *Day* v. *Public Service Commission*, 312 Pa. 381, 167 A. 565 (1933); *Davis* v. *Corporation Commission*, 96 Ariz. 215, 393 P. 2d 909 (1964); *Northfield Woods Water & Utility Co.* v. *Illinois Commerce Commission*, 28 Ill. App. 3d 664, 329 N.E. 2d 295 (1975).

Appellant argues that constitutionally adequate standards upon which to based revocation of a Certificate do not exist, thereby giving the Commission unregulated and undefined discretion. We disagree. Ark. Stat. Ann. § 77-1632 (2) provides that no company's territory can be reallocated when the company is providing "reasonably adequate telephone service." And, too, in a proceeding to revoke a Certificate, public necessity itself obviously becomes a standard. Also, due process safeguards exist to protect the Company from arbitrary action. Here, the Company had notice, a public hearing, and an opportunity to present and cross-examine witnesses. The Company received a written

order with findings of fact and conclusions of law and had the opportunity to petition for rehearing and seek judicial review. *See Public Ser. Commission* v. *Havemeyer, supra*.

The next issued raised by appellant is whether the Commission's decision to revoke the Company's Certificate was supported by substantial evidence. After hearing testimony from Commission staff, customers, and Company employees, the Commission made specific findings of fact which included detailed explanation of each Special Rule violated.

Although these rules represent minimum standards of acceptable service, followed routinely by most telephone companies, the Commission found the Company to be in violation of a dozen of such rules, including Special Rules 19 and 3.3, which the Company had been specifically ordered to follow.

Special Rule 19 provides that there must be at least one pay phone in each of the four exchanges in the Company's allotted area; however, the Company was providing pay phones only in its Woodson and Redfield exchanges. The Commission specifically ordered the Company to place a pay phone in its Hensley exchange. Instead of complying with this order, the Company removed its pay phone from the Woodson exchange, leaving only one pay phone in the Company's entire area. Thereafter, on September 12, 1975, the Commission issued an order directing the Company to install pay phones in both the Hensley and Woodson exchanges. Almost a year later, however, the Company had still not complied, thereby illustrating the Company's total disregard of the Commission's orders and rules.

Special Rule 3.3 requires that each utility submit a plan to upgrade service so that no more than four parties are on a line. On May 17, 1974, the Commission ordered the Company to file within 15 days a plan for conversion of eight party lines to four party lines as required by the rule. Later the Company was granted a rate increase primarily for this purpose. In spite of the Commission order and the rate increase, testimony at a Commission hearing three years

later revealed that the Company had still not complied with its order.

Special Rules 12 and 33 set standard for handling customer applications for telephone service as well as installation procedures and time tables. The Commission found violation of these rules based upon testimony at a hearing from numerous Company customers who expressed dissatisfaction with service. Their testimony revealed waiting periods of over a year before obtaining a telephone, lack of written notification as to when service would be provided, inability to obtain a private line as opposed to a party line, as well as billing problems.

The Commission additionally found the Company to be in violation of Special Rules 11.1, 17, 22, 26, 27, 28, 31, and 32. These findings were based upon testimony indicating lack of an adequate maintenance program for equipment and facilities, as well as lack of adequate facilities to meet anticipated demand for service. Other violations by the Company included failure to comply with minimum standards of the National Electric Safety Code, failure to maintain a record of trouble reports, and failure to equip central offices with required equipment and services.

In a judicial review of the Commission's decision, its findings of fact are tested by the standard of substantial evidence. Ark. Stat. Ann. § 73-229.1 (Repl. 1979). In light of the Commission's findings based upon the evidence as set out above, we find substantial evidence to support the Commission's revocation of the Certificate. Furthermore, it was not error for the Commission to deny the Company's petition for a rehearing. Rehearings before administrative bodies are addressed to their own discretion, and judicial interference is warranted only by a showing of the clearest abuse of discretion. *Southwestern Bell Telephone* v. *Arkansas Public Service Commission, supra; United States* v. *Interstate Commerce Commission,* 396 U.S. 491 (1970).

Appellant urges throughout its brief that the REA loan which it obtained would cure its problems and this should be considered before revocation of the Company's Certifi-

cate. We hold that there is substantial evidence to support not only the Commission's finding that the loan was considered, but also that the loan would not correct the Company's management deficiencies.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the opinion in this case because I feel the PSC has not handled the case as it should have. The controversy had become a personal matter between PSC staff members and Stancil Glasgow. The needs and wishes of the people in the area served by Redfield Telephone Company should have been uppermost in the minds of all parties involved including PSC personnel and Stancil Glasgow. When Glasgow failed to comply with the first order of the PSC, he should have been brought to task instead of ignored. It appears to me that the staff at the PSC deliberately gave him enough rope to hang himself and he obliged. However, the telephone customers have been left hanging alongside Mr. Glasgow.

The General Assembly did not specifically give the PSC the right to revoke a Certificate of Convenience and Necessity. However, it did expressly give the right to the PSC to grant a certificate as well as to enforce its orders. In the absence of a grant of power the PSC does not have the authority to revoke the certificate. I agree with the dissent of Commissioner Downie which is contained in the record.

The harshness of the order of revocation amounts to a taking of property without due process of law in my opinion. At the same time it adds to the woes of the intervenors or customers and would-be customers of telephone service in the Redfield area. The purpose of allowing Redfield to apply for the loan was to bring the service up to date. The company had held the charges of its service to customers to probably the lowest in the state. Redfield was no doubt in error by skimping on its services in order to keep the charges low. I do not intend to condone the action of Mr. Glasgow in ignoring the valid orders of the PSC.

As Commissioner Downie stated, the objective of the PSC should be to insure good telephone service to all who want it at the lowest possible cost. In an effort to comply with this objective and the orders of the PSC, Redfield obtained the services of a reputable engineering firm and in fact replaced Glasgow as head of the company. At the hearing Mr. Glasgow stated:

> It is our intention to implement every suggestion made by the Public Service Commission's staff in their recent report. In fact, we are doing more than was suggested. As I stated earlier, I have been so busy running the business myself, there were times I did not have the time to think of what was taking place in the community . . . .

It seems to me that when Redfield had completed all of the plans to update the services and comply with the orders of the PSC, the revocation order was entered. As a result, the Redfield Telephone Company had been practically shut down and the users and potential users of telephone service in the area are in worse shape than ever. There is no proposed schedule for implementing good services to the customers in the area. Likely the franchise will be awarded to another company which may take years to update and provide reasonable services and the customers will end up paying a heavier cost than they would have if corrective measures had been undertaken prior to the revocation of the Certificate of Necessity.

The cost of money to Redfield through the REA loan is no doubt much less than the cost of money borrowed by a large corporation on today's money market. It will be the customers who will be forced to pay this additional cost. In my opinion, the PSC should have filed an action in the courts and obtained a judicial determination of the matter of revocation. However, by taking the action themselves the power of the court was diminished inasmuch as the standard for review in the court is much less stringent than the burden would have been for an original hearing in the court.

Although appellee contends it considered the REA loan and its effects on the customers and the company, it is clear

from the record that such is not the case. If the loan was to be fully considered, why did the PSC not reopen the case to hear the details and effects of the loan? I submit it had become a personal matter and the customers will suffer and pay for such action. The PSC should not spare any effort, even if it has to swallow its pride sometime, in obtaining good telephone service at the lowest possible cost.